## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **DANIEL KARON**, individually and on behalf of all others similarly situated, | Case No. : 1:18-cv-00999 |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **APEX HEALTHCARE ADVISORS, INC**, a Florida corporation, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Daniel Karon ("Karon" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Apex Healthcare Advisors, Inc. ("Apex Healthcare" or "Defendant") to: (1) stop its practice of placing calls using "an artificial or prerecorded voice" to the telephones of consumers nationwide without their prior express written consent; (2) stop Defendant from calling consumers who are registered on the National Do Not Call Registry; and (3) obtain redress for all persons injured by its conduct. Plaintiff Karon, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff Daniel Karon is a natural person and resident of Cuyahoga County, Ohio.

2.      Defendant Apex Healthcare Advisors, Inc. is a corporation organized and existing under the laws of the State of Florida. Apex Healthcare systemically and continuously conducts business throughout this District, the State of Ohio, and the United States. Apex Healthcare can be served through its owner and registered agent, Juan Averoff, Jr, at 2500 Hollywood Blvd., Suite 314, Hollywood, Florida 33020.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

4.      This Court has personal jurisdiction over Apex Healthcare because Apex Healthcare solicits significant consumer business in this District, has entered into contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, and/or was directed to, this District. Specifically, Plaintiff received the prerecorded call at issue on his landline telephone, in this District. Moreover, Apex Healthcare's owner, Juan Averoff, Jr, is actively registered with the Ohio Department of Insurance and has been since at least April 4, 2013.[1]

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Apex Healthcare conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in, and/or was directed to, this District. Venue is additionally proper because Plaintiff resides in this District.

---

[1]
https://gateway.insurance.ohio.gov/UI/ODI.Agent.Public.UI/AgentLocator.mvc/DisplayIndividualDetail/748328

## COMMON ALLEGATIONS OF FACT

6.     Apex Healthcare, both directly and through unincorporated alter-egos purports to be a broker for consumer's seeking health insurance. In reality, Apex Healthcare is a lead generation business, obtaining and selling consumer leads to brokers and agents.

7.     For example, on a call with Plaintiff, Defendant's agent referred to the entity calling as "Health Registration Center." Health Registration Center appears to be the operator of six call centers in South Florida,[2] one of which shares the same address, down to the suite number, as Apex Healthcare.[3]

8.     In recent years, insurance firms such as Apex Healthcare have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing is a primary method by which Apex Healthcare solicits new customers.

9.     The TCPA prohibits companies, such as Apex Healthcare, from placing calls using an artificial or prerecorded voice ("prerecorded calls") when making calls to residential telephones without first obtaining consent.

10.    Apex Healthcare has violated, and continues to violate, the TCPA and its implementing regulations by placing prerecorded calls to residential telephone subscribers (a) who have not expressly consented to receiving such calls and/or (b) who have expressly requested **_not_** to receive such calls.

---

[2] *See* http://www.salesjobsftlauderdale.com/ ("Our goal is to staff ALL of our 6 Offices through-out Broward & Miami Dade Counties." and "From our state of the art dialer, to our in depth training, to our massive lead generation system...we provide the best opportunity in South Florida for a motivated sales agent.")
[3] *See* https://10to8.com/book/healthregcenter/ (website recruiting sales personnel listing same address as Apex Healthcare).

11.     As Congress recognized:

Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.[4]

12.     Senator Larry Pressler, one of the original drafters of the TCPA, explained the need for the TCPA by observing that "[u]nlike other communications media, the telephone commands our instan[t] attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." 137 Cong. Rec. S18785 (daily ed. Nov. 27, 1991) (statement of Sen. Pressler).

13.     As explained by the Federal Communications Commission ("FCC")[5], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

14.     Yet, in violation of this rule, Apex Healthcare fails to obtain any prior express written consent to place prerecorded calls to consumers' residential telephone numbers.

15.     In response to the liability risk associated with the TCPA, numerous commercially available services exist to help companies, such as Apex Healthcare, that call others using prerecorded voices, identify cellular subscribers and otherwise ensure

---

[4] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.
[5] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).

that calls are only made to consenting consumers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated.

16.     Despite the FCC's ruling, the industry guidelines, and the commercial availability of programs that help callers filter out non-consenting numbers, Apex Healthcare fails to take the necessary steps to ensure that its prerecorded calls are placed only to consenting recipients.

17.     Rather, in an effort to increase revenue and skirt additional costs, Apex Healthcare simply ignores the law when contacting individuals via prerecorded calls to their residential telephones.

18.     Apex Healthcare knows or should know that its prerecorded calls are placed to non-consenting residential telephone subscribers. Ultimately, Apex Healthcare is responsible for verifying telephone number ownership and obtaining consent before placing prerecorded calls to residential telephone subscribers.

19.     Apex Healthcare was, and is, aware that its unsolicited prerecorded calls were, and are, unauthorized as it fails to obtain prior express written consent before placing those calls to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited prerecorded calls.

20.     Telemarketers can easily and inexpensively avoid calling consumers who are registered on the National Do Not Call Registry by "scrubbing" their call lists against

the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers whom opt-out of telemarketing calls.

21.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

22.     There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[6] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[7]

23.     By placing the unsolicited prerecorded calls at issue in this Complaint, Apex Healthcare caused Plaintiff and the other members of the Class actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasions of privacy that result from the sending and receipt of such prerecorded calls, a loss of value realized for the monies consumers paid to their carriers for the receipt of such prerecorded calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

---

[6] *See e.g.* http://www.dncsolution.com/do-not-call.asp;
http://www.donotcallprotection.com/do-not-call-compliance-solutions-1;
http://www.mindwav.com/tcpa_compliance_solution.asp;
[7] https://www.neustar.biz/services/tcpa-compliance

24.     In response to Apex Healthcare's unlawful conduct, Plaintiff filed this action seeking (a) an injunction requiring Apex Healthcare to cease all unsolicited prerecorded calling activities and, (b) an award of actual or statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF DANIEL KARON

25.     Plaintiff Karon is the registered account owner and regular user of a landline telephone number 216-xxx-4662.

26.     On November 30, 2017 at 4:30 pm, Plaintiff received an unsolicited, pre-recorded phone call on his landline telephone from 216-868-6578. Plaintiff's caller ID identified the inbound call only as "wireless caller."

27.     The November 30, 2017 call used a pre-recorded voice and stated that the caller was "Michael with health enrollment" and asked if Plaintiff was unhappy with his current health insurance policy, deductible or premiums and asked Plaintiff to press 1.

28.     Plaintiff pressed "1" to speak with a live person and was connected with one of Defendant's telephone representatives, "Ralph."

29.     "Ralph" identified himself as affiliated with "Health Registration Center" and provided (855) 265-4277 as a callback number.

30.     "Ralph" then placed plaintiff on hold to "search for options" for healthcare coverage for Plaintiff.

31.     When "Ralph" returned to the line, he proceeded to quote a policy for "Federal Insurance Company" which happens to be one of the two health insurance companies that Apex Healthcare's owner, Juan Averoff, Jr, is licensed to sell in Ohio.[8]

32.     Plaintiff ended the call without committing to any purchase of insurance.

33.     Within minutes of the initial call, Plaintiff received two additional calls on his landline telephone from 954-866-2592. Plaintiff's caller ID identified the inbound calls as coming from Defendant, Apex Healthcare. Plaintiff did not answer the two additional calls.

34.     The calls at issue were unquestionably placed by Defendant, as the caller-ID displayed a name and/or number assigned to, and/or used by, Defendant.

35.     Plaintiff has never provided prior express written consent to Defendant to receive prerecorded calls to him on the 216-xxx-4662 number.

36.     Defendant failed to obtain prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

---

[8] See https://gateway.insurance.ohio.gov/UI/ODI.Agent.Public.UI/AgentLocator.mvc/DisplayIndividualDetail/748328

37.     By placing the prerecorded calls as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the prerecorded calls disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

38.     In order to redress these injuries, Plaintiff, on behalf of himself and the other members of the Class, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls to cellular telephones.

39.     On behalf of the Class, Plaintiff seeks an injunction requiring Apex Healthcare to cease all unsolicited pre-recorded calling activities and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

40.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Robocall No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's telephone number using an artificial or prerecorded voice; and (3) for whom Defendant lacked prior express consent to call that cellular telephone number at the time the call was made.

41.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the

Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the need to amend the definition of the Class following class discovery, including discovery revealing the manner by which Defendant claims they obtained prior express consent to place autodialed and/or pre-recorded calls to the Plaintiff.

42. **Numerosity**: The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed unsolicited calls to hundreds or thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

43. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiff is a member of the Class defined herein, and if Plaintiff is able to recover for the claims set forth in this Complaint, then the other members of the Class will have a right to recover as well.

44. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes.

Plaintiff has no conflicts with, or interests antagonistic to, those of the Class, and Defendant has no defenses unique to Plaintiff.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) Whether Defendant's conduct constitutes a violation of the TCPA;

b) Whether Defendant utilized an artificial or prerecorded voice to place calls to members of the Class;

c) Whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

d) Whether Defendant obtained prior express consent to contact any class members;

e) Whether Defendant's calls constitute telemarketing or were dual purpose messages; and

f) To the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

46. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

11

Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

47.     Adequate notice can be given to the members of the Class directly using information maintained in Defendant's records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Robocall No Consent Class)**

48.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

49.     Defendant and/or it's agent placed unsolicited calls to residential telephone numbers belonging to Plaintiff and the other members of the Robocall No Consent Class.

50.     These calls were made without the prior express written consent of the Plaintiff and the other members of the Robocall No Consent Class to receive such calls.

51.     These calls, including those to Plaintiff, utilized an artificial or prerecorded voice.

52.     To the extent prior written express consent was required, Defendant failed to obtain prior written express consent that disclosed to the consumer that agreeing to

receive pre-recorded calls was not a condition of purchase or use of any goods or service. No oral consent was provided either.

53.    To the extent Defendant's agent placed the calls at issue, Defendant's agent acted with actual or apparent authority and/or in accordance with a contract between Defendant and its agent. Defendant's agent acted under Defendant's control and for Defendant's benefit and/or with Defendant's knowledge and approval. Defendant controlled its agent and knew about, and received the benefits of, the agent's calling activities. Defendant ratified the agent's conduct with respect to the placing of such calls.

54.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(B). As a result of Defendant's conduct, Plaintiff and the other members of the Robocall No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

55.    In the event that the Court determines that Defendant's conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall No Consent Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Daniel Karon, individually and on behalf of the Class, prays for the following relief:

1.    An order certifying this case as a class action on behalf of the Class as defined above; appointing Karon as the representative of the Class and appointing his attorneys as Class Counsel;

2.      An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class;

3.      An order declaring that Defendant's actions, as set out above, violate the TCPA;

4.      An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

5.      An order requiring Defendant to identify any third-party involved in the prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

6.      An injunction requiring Defendant to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Class;

7.      An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

8.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

9.      Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**DANIEL KARON**, individually and on
behalf of a Class of similarly situated
individuals

Dated: May 1, 2018                                  By:   /s/Adam T. Savett
                                                                    One of Plaintiff's Attorneys

Adam T. Savett (VA73387)
adam@savettlaw.com
Savett Law Offices LLC
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

Attorneys for Plaintiff and the Putative Class